UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CAMERON WILKINS, ETC., | ) | CASE NO. CV 04-03420 (RZ) |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Cameron Wilkins was born July 15, 1992, two and a half months after Elbert Wilkins died.  Elbert Wilkins had insured status under Social Security regulations at the time of his death.  At issue here is whether the Court should uphold the Administrative Law Judge's decision that Plaintiff was not the natural child of Elbert Wilkins, and therefore is not entitled to receive survivor's benefits.  [AR 11 *et seq.*]

Under the Social Security Act and corresponding regulations, a child may establish his status as a deceased insured's natural child, and thereby become eligible for benefits, through a number of methods, but the only provision applicable here is that the child must be able to inherit the personal property of the deceased under the intestate succession laws of the state, *see* 42 U.S.C. § 416(h)(2)(A); 20 C.F.R. § 404.355 (a)(1).

1   Under California law, a deceased's personal property passes by intestate
2   succession to his children if there is no spouse,  CAL. PROBATE CODE § 6402(a), and a
3   relative of the decedent, conceived before the decedent's death but born thereafter, inherits
4   as if he had been born in the lifetime of the decedent.  CAL. PROBATE CODE § 6407.  As
5   applicable here, paternity (and therefore whether Plaintiff was a "relative" under  CAL.
6   PROBATE CODE § 6407) may be  established under any provision of the Uniform Parentage
7   Act.  CAL. PROBATE CODE § 6453(b).  The Uniform Parentage Act, codified in California
8   in CAL. FAMILY CODE §§ 7600 *et seq*., provides that a party may establish the existence of
9   a natural parent-child relationship by bringing an action for that purpose.  *See* CAL. FAMILY
10  CODE § 7630.  But, since Plaintiff here could not establish any statutory presumptions that
11  a natural child-parent relationship existed, the Probate Code would prohibit him from
12  prevailing in an action to establish paternity unless (1) a court order was entered during the
13  insured's lifetime declaring paternity (which did not happen); (2) paternity is established
14  by clear and convincing evidence that the father has openly held out the child as his own;
15  or (3) it was impossible for the father to hold out the child as his own and paternity is
16  established by clear and convincing evidence.  CAL. PROBATE CODE § 6453.  Although no
17  action to establish paternity was brought here, Social Security regulations provide that "[i]f
18  applicable State inheritance law requires a court determination of paternity, we will not
19  require that you obtain such a determination but will decide your paternity by using the
20  standard of proof that the State court would use as the basis for a determination of
21  paternity."  20 C.F.R. § 404.355(b)(2).

22  The Administrative Law Judge referred to and adopted the decision of a prior
23  Administrative Law Judge, upon Plaintiff's counsel's stipulation that the prior decision was
24  factually accurate.  [AR 29]  The Administrative Law Judge then found that Plaintiff had
25  not established any of the grounds to be considered the insured's natural child.  [AR 13-
26  14]  This Court must decide whether that decision is backed by substantial evidence.  42
27  U.S.C. § 405(g); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

28

Plaintiff claims that the Administrative Law Judge erred in not drawing a conclusion of paternity from the failure to submit to genetic testing. Elbert Wilkins had other children by other mothers, and the Administrative Law Judge made those children parties to the action, since any benefits awarded to Plaintiff would decrease the aliquot share paid to the other children. Neither the children, nor their mothers nor the Plaintiff's alleged grandfather agreed to undergo genetic testing, and it is this failure which Plaintiff argues establishes, by clear and convincing evidence, that Elbert Wilkins was Plaintiff's father.

The Administrative Law Judge did not agree, and neither does the Court. The statute upon which Plaintiff relies is CAL. FAMILY CODE § 7551. That statute authorizes a court in certain circumstances to order genetic tests of the mother, child and alleged father. The statute then provides that "[i]f a party refuses to submit to the tests, the court may resolve the question of paternity against that party or enforce its order if the rights of others and the interests of justice so require." In addition, "a party's refusal to submit to the tests is admissible in evidence in any proceeding to determine paternity."

The finding of paternity, which the statute allows, is based on an inference from failing to do an act which the party has an obligation to undertake, and which presumably the party would perform unless the anticipated results might be against his interests. Even then, the statute does not *mandate* a finding of paternity, but only *allows* the Court to make such a finding. Here, of course, the Administrative Law Judge issued no order to the putative siblings to undergo genetic testing, and Plaintiff cites no authority that he was empowered to do so; the statute only authorizes such an order against the mother, child or putative father. It certainly was within the Administrative Law Judge's discretion to decline to find paternity based on the wording of the statute.

Plaintiff also argues that there was clear and convincing evidence of Elbert Wilkins' paternity. The Administrative Law Judge ruled otherwise. There was not clear and convincing evidence that Elbert Wilkins "openly held out the child as his own," CAL. PROBATE CODE § 6453(b)(2). The evidence pertinent to application of this statute

consisted of the testimony of Joseph Wilkins (Elbert Wilkins's father), Joanna Alves (Plaintiff's maternal grandmother) and Plaintiff's mother. Joseph Wilkins' testimony was, in the charitable words of the Administrative Law Judge [AR 195], "confused." Mr. Wilkins had submitted a notarized statement acknowledging Plaintiff as his grandson, based on his son's statement that he had fathered a child by someone named Mary (Plaintiff's mother's name is Mary Abrams). He then told a Social Security representative that he had no knowledge of his son's relations, and seemed to both admit and deny that Plaintiff was his grandson, but even his admissions seemed to derive from what Plaintiff's *mother* had told him, not what Plaintiff's putative father had said. [AR 194-95] It must be remembered that this portion of the statute requires that the *father* openly hold himself out to *be* the father.

The Administrative Law Judge also found the maternal grandmother's testimony not to be credible. At a hearing in 1999, although she did not appear (even though subpoenaed), she submitted an unsworn statement that the insured had acknowledged to her that in October 1991 that the child Plaintiff's mother was carrying was his. This statement was inconsistent with the fact that, according to Plaintiff's mother, she did not tell Mr. Wilkins that she was pregnant until November 1991. Coupled with the fact that the statement was unsworn, that Plaintiff's maternal grandmother did not appear in response to the subpoena and that Plaintiff's grandmother said nothing of the matter until Plaintiff filed the application for benefits, led the Administrative Law Judge in 1999 to find Plaintiff's mother's statements not credible. [AR 195]

Plaintiff's mother did testify at a subsequent hearing. There she testified that twice the insured had acknowledged to her that he knew Plaintiff's mother was pregnant, and also stated that he would support the child. This was evidence in Plaintiff's favor, but the Court cannot say that the Administrative Law Judge erred in declining to give it controlling weight on the issue of whether the father openly held out the child as his own.

///

///

Plaintiff's mother also testified that she thought that the insured had told two other people that he was the father of her unborn child.  [AR 192 ]  These statements never were corroborated, however.

None of this evidence was clear and convincing on the issue of whether Elbert Wilkins held himself out to be the Plaintiff's father, as required by CAL. PROBATE CODE §6453(b)(2).  "'Clear and convincing' evidence requires a finding of high probability."  *In re Angelia P.,* 28 Cal. 3d 908, 919, 171 Cal. Rptr. 637, 623 P.2d 198 (1981).

But that issue was beside the point in any event, because CAL. PROBATE CODE § 6453(b)(2) was not the governing section.  In *Cheyanna M. v. A.C. Nielsen Co*., 66 Cal. App. 4th 855, 78 Cal. Rptr. 2d 335 (1998), the California Court of Appeal held that where a putative father died before the child was born, it was impossible for the father to have openly held out the child as his own, because of the simple fact that the child had not been born.  Since it was impossible for the father to have done so, the applicable section of the Probate Code was § 6453(b)(3), which provides simply that in that circumstance, paternity itself must be established by clear and convincing evidence.

The second of three Administrative Law Judges to consider this case, who wrote an extensive decision which then was incorporated into the decision of the third and final Administrative Law Judge, found that it was not impossible for the insured to have openly held out Plaintiff as his child.  [AR 200 ¶ 3]  This was an erroneous statement of the law.  In his discussion, although he purported to apply *Cheyanna M.*, he referenced as contrary authority the case of *In re Sanders*, 2 Cal. App. 4th 356, 3 Cal. Rptr. 2d 536 (1992), stating that the only method for showing paternity out of wedlock after an alleged father's death was clear and convincing evidence that the father openly and notoriously held the child out as his own.  [AR 195]  At the time *Sanders* was decided in 1992, that may have been a correct statement of the law, but section 6453(b)(3) was not added until later, in 1994, *Cheyanna M*., 66 Cal. 4th at 875, and therefore *Cheyanna M* was able to construe the law as it stood in 1998.  And, although the law at the time of the insured's death in 1992 here did not contain section 6453(b)(3), that section was part of the law in

2003, when the final administrative decision was made. Social Security regulations provide that if the insured is deceased, "[w]e apply the version of State law in effect when we make our final decision on your application for benefits." 20 C.F.R. § 404.355(b)(4).

There are two pieces of evidence which powerfully support Plaintiff's position. First, upon Plaintiff's birth, the mother listed Elbert Wilkins as the father. This was in 1992, three years before the application for survivor benefits was first made, and therefore at a time when the motive to have so listed Elbert Wilkins was likely to have been that Elbert Wilkins was, in fact, the father. Second, Plaintiff's mother testified twice, both at the hearing in 1999 [AR 192], and at the hearing in 2003 [AR 50], that she had sexual intercourse with no other man during 1991, the time period when Plaintiff most likely must have been conceived. There was no evidence casting doubt on this testimony, and the Administrative Law Judge did not find this testimony to lack credibility.

Normally under California law paternity is established by a preponderance of the evidence, and the unsupported testimony of the mother has been held to establish paternity under the preponderance standard. *Huntingdon v. Crowley*, 64 Cal. 2d 647, 651, 51 Cal. Rptr. 254, 258 (1966); *Berry v. Chaplin*, 74 Cal. App. 2d 652, 661, 169 P.2d 442 (1946). The Probate Code directs that the Court apply a more stringent standard here, the clear-and-convincing standard. That standard, as noted earlier, requires that there be a high probability. If Plaintiff's mother had intercourse with no other man during the relevant time, there is a high probability that Plaintiff is the child of Elbert Wilkins.

The proceeding before the Administrative Law Judge was a benefits proceeding, not an adversarial paternity lawsuit. Thus, it is not free from doubt that Elbert Wilkins was the Plaintiff's father, and it is possible that other evidence might have emerged in such an adversarial proceeding, at least earlier on. The clear-and-convincing standard, however, does not require proof beyond a reasonable doubt; it only requires a high probability. *Broadman v. Commission on Judicial Performance*, 18 Cal. 4th 1079, 1090, 77 Cal. Rptr. 2d 408 (1998). That high probability standard has been met.

Accordingly, the decision of the Commissioner must be reversed.  In this ten-year old case, where the evidence has been vetted before three separate Administrative Law Judges, it is unlikely that the record will be embellished further.  The court "may direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Schneider v. Commissioner of the Social Security Administration*, 223 F. 3d 968, 975 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  Therefore, the matter is remanded for the payment of benefits.

IT IS SO ORDERED.


DATED:   August   __11__ , 2005



_____
                     /s/
              RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE